UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPERATING ENGINEERS LOCAL 324
HEALTH CARE PLAN, OPERATING ENGINEERS
LOCAL 324 PENSION PLAN, OPERATING
ENGINEERS LOCAL 324 RETIREE BENEFIT
FUND, OPERATING ENGINEERS LOCAL 324
VACATION FUND, OPERATING ENGINEERS
LOCAL 324 SUPPLEMENTAL VACATION FUND,
OPERATING ENGINEERS LOCAL 324
APPRENTICESHIP FUND, OPERATING
ENGINEERS LOCAL 324 INDUSTRY
ADVANCEMENT FUND, OPERATING ENGINEERS
LOCAL 324 LABOR MANAGEMENT FUND, and
OPERATING ENGINEERS LOCAL 324 DEFINED
CONTRIBUTION PENSION PLAN,

  Plaintiffs,          Case No. 13-10636
                   Hon. Lawrence P. Zatkoff
-vs-

S-CON CORPORATION, JEFFREY C. STOKES, and
S-CON COMPANIES OF MICHIGAN
CORPORATION,

  Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 15, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
       UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is currently before the Court on Defendants' Motion for Summary Judgment [dkt. 23] and Plaintiffs' Cross Motion for Partial Summary Judgment [dkt. 28]. All of the motions are fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by

oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED, Plaintiffs' Cross Motion for Partial Summary Judgment is DENIED, and the entire matter is HEREBY DISMISSED.

## II. BACKGROUND

On April 24, 2002, Defendant S-Con Corporation ("S-Con"), a small construction business specializing in underground construction services, agreed to be bound to a collective bargaining agreement ("CBA") between several construction trade associations and the International Union of Operating Engineers Local 324 (the "Union").[1] Plaintiffs Operating Engineers Local 324 Health Care Plan, Operating Engineers Local 324 Pension Plan, Operating Engineers Local 324 Retiree Benefit Fund, Operating Engineers Local 324 Vacation Fund, Operating Engineers Local 324 Supplemental Vacation Fund, Operating Engineers Local 324 Apprenticeship Fund, Operating Engineers Local 324 Industry Advancement Fund, Operating Engineers Local 324 Labor Management Fund, and Operating Engineers Local 324 Defined Contribution Pension Plan ("Plaintiffs") are trust funds established under Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186, and the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et. seq.* ("ERISA"). Plaintiffs are not parties to the CBA but are third-party beneficiaries of the fringe benefit provisions fully integrated into the CBA by reference. *See* Dkt. # 28, Ex. 10-14. Under the fringe benefit provisions of the CBA, S-Con was obligated to remit fringe benefit contributions to Plaintiffs on a monthly basis, and also to submit to periodic audits.

---

[1] Defendants became a party to the CBA by executing a Short-Form agreement under which they "agreed to abide by the Wage Rates, Fringe Benefits, and all other terms, conditions and provisions in the most current [CBA] . . . ." *See* Dkt. # 28, Ex. 1.

The duration of the CBA was governed by Article XII, which provides:

This Agreement shall remain in full force and effect until the first day of September, 2003, and thereafter shall continue in force from year to year, unless either party hereto shall notify the other party in writing at least ninety (90) days prior to the end of the current term, or as the case may be, ninety (90) days prior to the end of any additional Agreement year, of its intention to make changes in, or terminate, this Agreement. Such written notice shall specify any changes or amendments desired by the party giving such notice and shall be sent by registered mail to the other party.

*See* Dkt. # 28, Ex. 3, p. 55.

On or around December 12, 2002, Defendant Jeffrey Stokes ("Stokes"), President of S-Con, called Kim Chaffee ("Chaffee"), an employee of Plaintiffs, to communicate S-Con's desire to terminate the CBA. *See* Dkt. # 23, Ex. 2, p. 2 ¶ 7. Stokes sent Chaffee the following letter via first-class mail, dated December 12, 2002:

Kim,

Per our phone conversation, this letter is to inform you that S-Con will not be able to be in agreement with the [Union] as of Jan 01 2003, I also will not employ any operating engineers from the [Union] as of Jan 01 2003. S-Con will be a non union company due to the lack of work and the financial responsibilities that at this time S-Con cannot afford [. . . .]

                                                                           Thank You
                                                                           S-CON CORP.
                                                                           Jeff Stokes
                                                                           President

*See* Dkt. # 23, Ex. 3. Stokes further claims to have hand-delivered a copy of the same letter to Chaffee while Chaffee visited an S-Con work site, also on or around December 12, 2002. *See* Dkt. # 23, Ex. 2, p. 3 ¶ 10. The letter was not returned to S-Con as undeliverable, and neither

Chaffee nor anyone else from the Union notified Defendants that the December 12, 2002 letter did not operate to terminate the CBA.  Defendants contend the December 12, 2002 letter was delivered far in advance of the September 1, 2003 end of the CBA term, thereby satisfying the applicable ninety day notice requirement to terminate the CBA under Article XII.  Plaintiffs, on the other hand, contend that the December 12, 2002 letter *did not* terminate the CBA, and as a result, allege Defendants remain bound to subsequent CBAs by virtue of the evergreen clauses provided therein.[2]

Plaintiffs filed suit against S-Con and Stokes in 2006, claiming that Defendants owed the Union $44,044.96 for the period from January 2002 through December 2004.  *See* U.S. District Court Case No. 06-14757.  The parties reached a monetary settlement in that case, and the District Court entered a stipulated order dismissing the action "in its entirety, with prejudice with respect to any and all claims against Defendants involving claims for engagement of employees, subcontractors or other entities prior to December 31, 2004. . . ."  *See* U.S. District Court Case No. 06-14757, Dkt. # 11.  S-Con went out of business shortly thereafter, and has not performed any work since at least 2007.[3]  *See* Dkt. # 23, Ex. 2, p. 4 ¶ 18.

On March 31, 2011, Plaintiffs formally requested an audit of S-Con's records dating back to January 2008.  S-Con refused to comply with Plaintiffs' audit request on the ground that its December 12, 2002 letter terminated the CBA, thereby ending S-Con's obligations to contribute to Plaintiffs' funds.

---

[2] Plaintiffs argue that because Defendants failed to terminate the 2000-2003 CBA, they became automatically bound to the 2003-2007, 2007-2010, and 2010-2014 CBAs by virtue of the evergreen clauses provided therein.  Thus, Plaintiffs contend Defendants are presently bound to the 2010-2014 CBA.

[3] S-Con was automatically dissolved by the State of Michigan on July 15, 2012.  *See* Dkt. # 29, Ex. 8.

Plaintiffs commenced the instant suit on February 15, 2013, against Stokes, S-Con, and S-Con Companies of Michigan Corporation ("SCCMC"). Plaintiffs seek: (a) an adjudication that Defendants remain bound to the fringe benefit portions of the CBA during the requested audit period, (b) an audit of S-Con from January 1, 2008, through the present, and (c) payment of any contributions determined due as a result of the audit. Plaintiffs' four-count First Amended Complaint alleges:

> (1) S-Con breached the fringe benefit contribution provisions under the CBA as well as its obligations to maintain and submit records under ERISA;
>
> (2) S-Con and SCCMC are a single employer and/or the alter egos of a single enterprise, and are therefore jointly and severally indebted to Plaintiffs under ERISA;
>
> (3) Stokes, in his capacity as owner and officer of S-Con and SCCMC, breached his fiduciary duties under ERISA by failing to remit to Plaintiffs those contributions due during the audit period under the CBA, and is therefore personally liable for any contributions determined due; and
>
> (4) Pursuant to the Michigan Building Contract Fund Act, M.C.L. § 570.151 *et. seq.*, the CBA, and the fringe benefit provisions incorporated therein, Stokes breached his fiduciary duties as a trustee by failing to remit fringe benefits to Plaintiffs, and is therefore personally liable for any contributions determined due.

*See* Dkt. # 11, p. 2-7 ¶ 8-32. Defendants maintain they terminated the CBA by submitting the letter dated December 12, 2002, and are therefore not subject to Plaintiffs' audit request. After the close of the discovery period, Defendants and Plaintiffs respectively moved for summary judgment in the motions presently before the Court.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, with all inferences made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Mere allegations of a cause of action will no longer suffice to get a plaintiff's case to the jury. *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the

jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Defendants seek summary judgment on the ground that Plaintiffs received actual notice of their intent to terminate the CBA by way of the December 12, 2002 letter, which was sent via first-class mail – and hand-delivered – to Chaffee. Plaintiffs, on the other hand, maintain Defendants failed to adhere to the plain language of the CBA, which requires a party terminating the CBA to send written notice by registered mail. As a result, Plaintiffs contend Defendants remain bound by the subsequent CBAs. In the alternative, Plaintiffs argue Defendants' subsequent conduct re-adopted the CBA *even if* their December 12, 2002 letter had previously terminated the CBA.

**A.    Defendants Properly Terminated the CBA**

Plaintiffs argue the operative elements of terminating the CBA are 1) written notice 2) between all the parties to the contract and 3) provable service of such written notice by registered mail. Defendants counter that if the intended recipient actually receives the letter at issue, then the recipient has actual, timely notice, and it does not matter whether the letter was sent via first-class mail, registered mail, or personal service. The Court agrees with Defendants.

Plaintiffs rely on the Sixth Circuit's decision in *Carpenters Local Union No. 345 H&W Fund v. W.D. George Const. Co.* for the proposition that an employer remains bound to a CBA when it fails to formally indicate its intent to terminate the agreement. *See* 792 F.2d 64, 69-70 (6th Cir. 1986). Plaintiffs' reliance on *W.D. George* is misplaced. The CBA in *W.D. George* was terminable only after "written notice . . . by one party to the other not less than sixty (60) days prior to the expiration date of [the CBA]." *Id.* at 67. Although the defendant-employer in

7

*W.D. George* had not formally indicated its intent to terminate the CBA until February 1983, the District Court found defendant expressed its desire to withdraw from the CBA when it stopped contributing to the plaintiff-funds in May 1981. *Id.* at 68. The Sixth Circuit reversed, reasoning that the defendants not only failed to satisfy the termination requirements provided in the CBA, but also failed to formally notify the plaintiffs of their intent to withdraw from the CBA, *period*, until February 1983. *Id.* at 69. ("Defendants never formally indicated that they wanted out of this continuing bargaining relationship until February of 1983 . . . when defendants sent notice to the union of their intent not to be bound by any agreement after April 30, 1983.")

Unlike Plaintiffs in the instant case, the plaintiffs in *W.D. George* did not seek substance over form. Rather, they argued that the defendants failed to provide *any* notice of its intent to terminate the CBA prior to the February 1983 written notice. Plaintiffs in the instant case fail to adequately address, not to mention controvert, the fact that they received actual, formal notice of Defendants' intent to terminate the CBA.

Defendants sent their December 12, 2002 letter to Chaffee via first-class mail and hand-delivered a copy of that letter to Chaffee when he visited an S-Con worksite shortly thereafter. Rather than deny Chaffee received the letter, Plaintiffs argue Chaffee was Plaintiffs' employee—not an employee of the Union. Plaintiffs also contend Defendants mailed the letter to the wrong address.[4] Thus, Plaintiffs argue that *even if* they had notice of Defendants' intent to terminate the CBA, the Union did not.[5] Defendants insist the difference in addresses is immaterial because

---

[4] Defendants mailed the letter to "Local 324 Operating Engineers, 37450 Schoolcraft Rd., Suite 120, Livonia, MI, 48150, Attn: Kim Chaffee." *See* Dkt. # 23, Ex. 3. The Union's address, although largely the same, is at Suite 110 rather than Suite 120. Therefore, it appears Defendants mailed the letter to Plaintiffs' address rather than the Union's.

[5] It is not lost on the Court that neither the Union nor the relevant trade association are parties to this lawsuit, and as a result, neither claims that it lacked notice of Defendants' intent to terminate

Chaffee held himself out to be Defendants' Union Representative, and therefore Defendants sent their termination letter to Chaffee in accordance with the CBA.

Indeed, although it appears Defendants should have mailed the termination letter to the Union's address rather than Plaintiffs' address, the CBA lacks an express provision specifying to whom, or to where, written notice of intent to terminate the CBA must be sent. The CBA does however provide "[t]he Union shall select a representative . . . who is to confer with the Contractor on all matters pertaining to this Agreement." CBA Article III § 5. *See* Dkt. # 28, Ex. 3, p. 14. The CBA also provides "[t]he authorized representatives of the Union may visit jobs during working hours . . . ." CBA Article III § 6. *See* Dkt. # 28, Ex. 3, p. 15.

In his affidavit, Stokes claims "S-Con's communications with the Union were almost entirely conducted by speaking with Mr. Kim Chaffe (sic)." *See* Dkt. # 23, Ex. 2, p. 2 ¶ 5. Consistent with CBA Article III § 5, Stokes claims Chaffee "conferred with S-Con about all matters pertaining to the [CBA] between S-Con and the Union. *Id.* Furthermore, consistent with CBA Article III §§ 5 and 6, "Mr. Chaffe (sic) would visit S-Con's jobs during working hours and even offer comments about who should operate S-Con's loader (S-Con's only piece of equipment); in particular, Mr. Chaffe (sic) would inform Mr. Stokes that only Union operators should operate S-Con's loader." *Id.* Therefore, Chaffee's actions were consistent with those of a Union Representative under the CBA. Consequently, Defendants contend Chaffee held himself out as S-Con's Union Representative, and S-Con believed Chaffee was its Union Representative. *See* Dkt. # 23, Ex. 2, p. 2 ¶ 6. Relying on that belief, Defendants directed their termination letter to Chaffee.

---

the CBA. Rather, it appears Plaintiffs are attempting to divert the Court's attention from the fact that Plaintiffs received notice of Defendants' intent to terminate the CBA.

The Court agrees with Defendants that directing their termination letter to Chaffee – ostensibly their Union Representative – was consistent with the directive in Article III § 5 of the CBA that they confer with their Union Representative as to "all matters pertaining to the [CBA]." Certainly, the termination process under Article XII of the CBA is included within "all matters pertaining to the [CBA]." As a result, S-Con reasonably believed it had withdrawn from the CBA, as neither Chaffee nor anyone else from the Union advised S-Con in 2002 or 2003 that the Union would only accept a termination letter via registered mail. Dkt. # 23, Ex. 2, p. 2 ¶ 12.

Plaintiffs failed to produce evidence disputing the allegations in Stokes' affidavit that: (1) Chaffee held himself out as S-Con's Union Representative, and (2) S-Con therefore believed it had terminated the CBA.[6] Instead, Plaintiffs insist Defendants' failure to adhere to the registered mail requirement under the CBA is fatal. Plaintiffs contend the purpose of the registered mail requirement is to produce dispositive evidence of delivery of the termination notice from a disinterested third party (the United States Postal Service) so that timeliness of notice is indisputable. Defendants counter that their failure to send the letter via registered mail is inconsequential because Plaintiffs received the letter and thus had actual notice of Defendants' intent to terminate the CBA.

The Court agrees with Defendants. Courts routinely hold that actual receipt of timely written notice, particularly when hand-delivered, will at a minimum substantially comply with a registered or certified mail requirement. *See In re Morris*, 491 Mich. 81, 112 n. 22 (2012) (noting that while there are even differences between certified and registered mail, only personal service – which affords greater protections than both certified and registered mail – may

---

[6] Plaintiffs argue that Jon Gannon, the Union Business Representative who obtained Stokes' signature on the Short-Form agreement, was the Union Representative responsible for conferring with Defendants. The factual support for Plaintiffs' argument does not comport with Article III §§ 5-6 of the CBA. Therefore, the Court finds this argument untenable.

substitute for registered mail in some instances.); *Pi-Con, Inc. v. A.J. Anderson Const. Co.*, 435 Mich. 375, 387 (1990) ("Because we agree with the [United States] Supreme Court that the certified mail requirement is intended to ensure actual receipt and not to qualify the right to sue on a manner of delivery or proof of delivery, we hold that the plaintiff has a right to prove actual receipt of notice by a preponderance of the evidence."); *Clayton v. Ann Arbor Motor Inn, Inc.*, 94 Mich. App. 370, 375 (1979) ("It is the opinion of this Court that the more expensive and reliable method of attempted personal service at defendant's corporate offices was sufficient to satisfy the requirement that the documents be mailed by registered mail to those offices. The court rule provides a minimum requirement with regard to service of process and does not preclude more reliable and expensive methods of service.").

Plaintiffs concede the purpose of the registered mail requirement is to provide provable service of written notice, yet fail to counter the substance of Stokes' affidavit that Plaintiffs received actual notice of Defendants' intent to terminate the CBA when Stokes hand-delivered the December 12, 2002 termination letter to Chaffee—Plaintiffs' employee. Plaintiffs instead argue the Stokes' affidavit contains conclusory allegations repeated from Defendants' answer, and claim such statements are insufficient to support summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Defendants misunderstand the shifting burden of proof under Rule 56.

"[T]he purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues."  *See Lujan v National Wildlife Federation*, 497 U.S. 871, 888-89 (1990)). Federal Rule of Civil Procedure 56(e)(3) provides:

11

> (e) Failing to Properly Support or Address a Fact. If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> * * *
>
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it [. . . .]

Thus, "in the face of a properly supported motion for summary judgment, the nonmoving party cannot merely rest on its pleadings, but must come forward with probative evidence to support its claim." *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943044 (6th Cir. 1990) (citing *Celotex Corp.*, 477 U.S. at 324) *overruled in part on other grounds, Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 217 n. 4 (6th Cir.1992). Stokes' affidavit clearly indicates that he personally served Chaffee with Defendants' letter of intent to terminate the CBA. Plaintiffs, on the other hand, fail to provide a single sworn document to the contrary, leaving the pertinent substance of the Stokes affidavit uncontroverted. Therefore, Plaintiffs fail to properly address Defendants' assertion of fact as required under Rule 56(e). Accordingly, the Court finds that Plaintiffs received actual notice of Defendants' intent to withdraw from the CBA.

Finally, Plaintiffs rely on *Trustees of the B.A.C. Local 32 Insurance Fund v. Fantin* for the proposition that a party seeking to terminate a CBA must strictly adhere to the unambiguous termination requirements provided therein to terminate the agreement. *See* 163 F.3d 965 (6th Cir. 1998). In *Fantin*, the District Court rejected the defendant's argument that the existence of a subsequent contract constituted written notice of its intent to terminate the initial contract. *Id*. at 968. The Sixth Circuit affirmed, reasoning that the evergreen clause of the contract would renew the parties' contractual obligations until a party explicitly terminated the agreement in writing within the time provided in the termination clause. *Id*. at 968-969.

*Fantin* is distinct from the instant case for several reasons. Defendants in the instant case do not claim that an alternative termination procedure not provided in the CBA, such as the evergreen clause termination theory used by the Defendants in *Fantin*, terminated the CBA. Rather, Defendants establish they expressly notified Plaintiffs in writing of their intent to terminate the CBA. Moreover, Defendants in this case went *above and beyond* the notice requirements provided in the CBA when they personally served Plaintiffs with their termination letter; the *Fantin* defendants' theory that a later CBA constitutes notice of termination of an earlier CBA fell far short of the notice requirements in that case. This Court will not punish Defendants for utilizing the "belt and suspenders" approach to notifying Plaintiffs of their intent to terminate the CBA.

**B.     Defendants Did Not Re-Adopt the CBA by Conduct**

Plaintiffs maintain that, even if Defendants' effectively terminated the CBA by their December 12, 2002 letter, Defendants re-adopted the CBA by submitting a fringe benefit contribution in March 2004. The following statement appears immediately above the employer signature line of the report accompanying Defendants' March 2004 fringe benefit contribution:

> By filing this report, the above named Employer agrees to be bound by all the terms of payment to the foregoing named Funds, as set forth in the current applicable Collective Bargaining Agreements between Operating Engineers Local 324 and Employer Associations, and to all the terms of the Trust Agreements of these Funds.

*See* Dkt. # 26, Ex. 11, p. 2.

Despite Plaintiffs' claims to the contrary, Defendants' March 2004 benefit contribution did not operate to re-adopt the CBA. First, Defendants did not sign the report accompanying the March 2004 contribution. Second, Plaintiffs fail to cite binding authority for the proposition that

13

Defendants' March 2004 contribution constitutes re-adoption of the CBA by conduct. Rather, Plaintiffs rely on *Brown v. C. Volante Corp.*, a case in which the Second Circuit held that, because an employer routinely submitted *sixty-one separate remittance reports* over the course of *six years*, such conduct manifested that employer's intent to adopt CBAs it had not signed. 194 F.3d 351, 353-55 (2d. Cir. 1999). Conversely, Defendants only submitted one report in the instant matter. Moreover, Defendants had recently notified Plaintiffs of their intent to terminate the CBA, while the employer in *Brown* did the exact opposite by sending the putative beneficiary a letter manifesting its understanding that it was bound to make contributions on behalf of the employees. *Id*. at 355-56. ("[Defendant's] letter thus not only fails to create a genuine issue as to liability, but actually tends to establish adoption of the unsigned CBAs.")

Finally, the stipulated order dismissing the 2006 litigation between the parties in this case expressly provides "[the] action is dismissed in its entirety, with prejudice with respect to any and all claims against Defendants involving claims for engagement of employees, subcontractors or other entities prior to December 31, 2004 . . . ." *See* U.S. District Court Case No. 06-14757, Dkt. # 11. That order having dismissed *any and all* claims against Defendants prior to December 31, 2004, Plaintiffs have failed to demonstrate that the March 2004 contribution, which clearly falls within the timeframe covered by the stipulated order dismissing the 2006 litigation, has any bearing on this matter whatsoever.

Accordingly, the Court finds Defendants did not re-adopt the CBA by conduct when they submitted the March 2004 benefit contribution.

**C.     Conclusion**

The Court, having found that: (1) Plaintiffs received actual notice of Defendants' intent to terminate the CBA within the applicable 90 day time frame provided in the CBA, and (2)

14

Defendants' submission of the March 2004 benefit contribution did not operate to re-adopt the CBA by conduct, concludes Defendants are entitled to summary judgment. For the same reasons, the Court concludes Plaintiffs are not entitled to summary judgment. Accordingly, the ERISA-specific claims in Plaintiffs' First Amended Complaint (Counts 1-3) will be dismissed with prejudice.

### D.    Plaintiffs' State Law Claim

Federal district courts have original subject-matter jurisdiction over cases arising under federal law. 28 U.S.C. § 1331. Plaintiff's First Amended Complaint consists of 4 Counts: Counts 1-3 arise under federal law, but Count 4 appears to be based on state law. *See* Dkt. # 11, p. 2-7 ¶ 8-32. The Court has original subject-matter jurisdiction over the federal claims in Counts 1-3. 28 U.S.C. § 1331. The state law claim in Count 4, however, is before the Court on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). 28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a supplemental claim if "the district court has dismissed all claims over which it has original jurisdiction . . . ."

As all federal claims over which this Court has original jurisdiction have been dismissed, the Court declines to exercise supplemental jurisdiction over the state law claim in Count 4 of Plaintiffs' First Amended Complaint. Accordingly, the Court dismisses Count 4 of Plaintiffs' First Amended Complaint without prejudice.

### E.    Defendant-SCCMC

The Court acknowledges that, unlike Defendants S-Con and Stokes, SCCMC did not move for summary judgment. However, SCCMC's alleged liability in this case stems from Plaintiffs' claim that SCCMC is a successor company to S-Con. The Court, having concluded that S-Con and Stokes properly terminated the CBA and did not re-adopt the CBA by conduct,

finds there is no basis from which SCCMC may be held liable as a successor to S-Con. Accordingly, SCCMC is dismissed from this matter.

## V. CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that Plaintiffs' Cross Motion for Partial Summary Judgment [dkt. 28] is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment [dkt. 23] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' federal claims (Counts 1-3) are therefore DISMISSED WITH PREJUDICE, and Plaintiffs' state law claim (Count 4) is DISMISSED WITHOUT PREJUDICE.  Judgment shall be entered accordingly.

IT IS SO ORDERED.

|  |  |
|---|---|
| Date:  August 15, 2014 | s/Lawrence P. Zatkoff<br>HON. LAWRENCE P. ZATKOFF<br>U.S. DISTRICT JUDGE |